# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 15, 2013

## ARCHIE T. WILSON v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
### No. 2010-C-2491      Monte Watkins, Judge

---

### No. M2012-02024-CCA-R3-PC - Filed August 21, 2013

---

In 2011, the Petitioner, Archie T. Wilson, pled guilty to attempted aggravated rape and attempted aggravated kidnapping, and the trial court sentenced him to a twenty-year effective sentence. The trial court also ordered that the Petitioner register as a sex offender and be placed on community supervision for life. The Petitioner filed a petition for post conviction relief, which the post-conviction court dismissed after a hearing. On appeal, the Petitioner contends that his guilty pleas were not knowingly and voluntarily entered and that he had received the ineffective assistance of counsel. After a thorough review of the record and applicable authorities, we conclude that the post-conviction court did not err when it dismissed the petition. The post-conviction court's judgment is, therefore, affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the Appellant, Archie T. Wilson.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Hugh Ammerman, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts

#### A. Guilty Plea

This case arises from an assault on two women that occurred in a parking lot in downtown Nashville. With regard to these events, a Davidson County grand jury indicted the Petitioner for aggravated rape, aggravated kidnapping, and attempted aggravated kidnapping. In accordance with a plea agreement, the Petitioner pled guilty to attempted aggravated rape and attempted aggravated kidnapping. At the guilty plea hearing, the State informed the trial court that, had the case gone to trial, the facts would have proven:

[O]n June 15th, 2010, just before three a.m., Archie Wilson was at Buck Wild nightclub on Second Avenue, here in Davidson County, downtown Nashville, by himself in the bar.

The victims, Ms. [J.L.] and [L.H.] were there. And when they left to go to [J.L.'s] vehicle, which was parked in the parking lot on the corner of Second Avenue and Broadway, video surveillance depicted [the Petitioner] walking at a measured distance behind these victims, directly behind them.

At the point in which they reached [J.L.'s] vehicle the attack began, coincident with [J.L.] trying to unlock her door. [The Petitioner] grabbed [L.H.] from behind, shoved her around to the driver's side where he effectively corralled both women in the wedge created between Ms. Latimer's open driver's door and the vehicle.

[The Petitioner] then tried to achieve three things: Tried to keep them both quiet; get the car keys out of the hand of [J.L.]; and, get both women in the vehicle. He did so by hitting both of them, by threatening multiple times to kill both of them if they did not do what he asked. He did manage to get [L.H.] inside the car. But he was never able to get the keys from [J.L.'s] grip. He did get the driver's seat of her vehicle forward and tried to push her in, but was unable to do so.

At that point, [the Petitioner] took it on himself to go ahead and do what I think was his intent wherever he could get the women; and he pushed [J.L.] down onto the pavement of the parking lot, gripped her by the back of her neck with her dress hiked up around her hips. He held her face down on the ground, pressing her cheek into the pavement parking lot and drew her underwear aside and forcibl[y] engaged in penile-anal penetration of the victim. She sustained numerous injuries as a result.

While he was doing this [L.H.] was able to get out of the vehicle and retain the assistance of three civilians, one of whom stayed with the young women, two others chased [the Petitioner] down and held him until police arrived.

When police arrived [the Petitioner] stated that the boys who had chased him raped the victim and not him.

Officer[s] took him into custody, noticed that his fly was down when he took him into custody.

DNA analysis was performed revealing [the Petitioner's] DNA was present in the form of blood on a small portion of [J.L.'s] dress; and, that DNA was found in his underwear . . . from which [J.L.] could not be excluded.

The trial court questioned the Petitioner about his desire to enter pleas of guilty and informed the Petitioner of his rights. The Petitioner acknowledged understanding those rights, stated that he was not being threatened, and said he had reviewed and understood the guilty plea petition. The trial court then accepted the Petitioner's pleas of guilty to attempted aggravated rape and to attempted aggravated kidnapping. The trial court sentenced him to twenty years in the Tennessee Department of Correction.

## B.  Post-Conviction Petition

The Petitioner filed a petition for post-conviction relief, alleging that his guilty pleas were not knowingly and voluntarily entered and that he had received the ineffective assistance of counsel. At the hearing on the petition, the Petitioner testified that his counsel during his guilty plea hearing, "Counsel", had visited him less than ten times before the guilty plea hearing. He said that she went to jail to visit him. The Petitioner said that Counsel never reviewed with him the charges or the range of punishment he faced, except for telling him that the trial judge was going to sentence him to between forty-five and sixty years.

The Petitioner testified that he had the ability to read and write and that he had achieved his GED from high school.

The Petitioner contended that Counsel did not properly investigate his case. The Petitioner said Counsel told him that she had made phone calls to specific potential witnesses, but the private investigator later told him that Counsel had not made such phone calls. He also alleged that Counsel told him that she had filed subpoenas for the owner of the bar involved in this case. The Petitioner alleged that this was untrue because Counsel failed to

tell him that the owner never received the subpeonas.

The Petitioner said he met with the private investigator about eight months before he entered his guilty pleas. During this meeting, the investigator told him things "that w[ere] going on."

The Petitioner alleged that Counsel was ineffective for failing to pursue his assertion that the crime scene had been tainted. He alleged that, before the crime scene was searched, other individuals came to the crime scene. The Petitioner said that Counsel wrote him a letter saying that police had found the fingerprints of other individuals in the car, which would help him at trial. He said, however, he received this letter after he had already entered his guilty plea.

The Petitioner asserted that the TBI report indicated that he was excluded as a contributor of the DNA recovered from J.L., the victim who claimed she was anally raped. The report also said that Joshua Stringfellow could not be excluded as a contributor. The Petitioner said that, when he and Counsel discussed this, Counsel told him that she wanted "more information." He did not know what more information she needed when the report exonerated him. This, he said, was true especially in light of the fact that Counsel never shared any other evidence against him that may have been incriminating.

The Petitioner said he pled guilty because Counsel told him that there was no way he could win if he went to trial and that she could not help him. Counsel informed the Petitioner that the judge would use the Petitioner's prior record against him and sentence him to more than sixty years. The Petitioner said "[t]here was someone else . . . that said that the Judge would give [him] a hundred years if ]he] didn't take the twenty years [and] was found guilty." He said he wanted to take his case to trial, but he was "scared." He said the evidence clearly showed he was "innocent" but that Counsel kept telling him that she could not help him.

The Petitioner also contended that he did not understand why he was sentenced as a Range II offender. He said he was a "new offender in the State," meaning he should have been sentenced as a Range I offender.

During cross-examination, the Petitioner testified that Counsel never discussed with him his previous convictions from Kentucky. He agreed he had four previous convictions from Kentucky. The Petitioner agreed that he had received all the DNA reports, including the report that indicated that his DNA was found on J.L.'s dress. The Petitioner also conceded a second DNA report said that J.L. could not be excluded as a contributor to DNA found in his own underwear. The Petitioner also agreed that he was at the crime scene.

The Petitioner testified that his case was set for trial and that the parties had begun voir dire before he entered his guilty pleas. He agreed that he faced a sentence of fifty-five years, some of which would have been required to be served at 100%. On the morning of trial, the State offered to let him plead guilty to twenty years, as a Range I offender at 30%.

Counsel testified she represented the Petitioner, and her representation began before the Petitioner's preliminary hearing. Counsel said she, or the other assistant public defender working with her, met with the Petitioner thirteen times. In addition, the investigator from their office met with the Petitioner on three other occasions.

Counsel said that the evidence against the Petitioner included the Petitioner's DNA found on J.L.'s dress, which was "fairly conclusive" that the two had engaged in some type of contact. DNA from two contributors was found on J.L. One contributor was Joshua Stringfellow, who J.L. had identified as her most recent consensual sexual partner. During testing, the TBI was unable to isolate the second DNA contributor to the Petitioner, but he was included as a possible contributor. There was also DNA on the Petitioner's underwear from which J.L. could not be excluded as a contributor. Counsel said she wrote the Petitioner a letter attempting to explain each piece of DNA evidence.

Counsel said that the State also had a surveillance video from a store on the same block where the attack happened. The video depicted J.L. and L.H. walking, with the Petitioner walking fifty feet behind them. Counsel said she discussed this with the Petitioner and also discussed with him his prior criminal history. She explained to him the potential sentence he could face if convicted of the various offenses. She said she advised him of the possible punishments and range of punishments.

Counsel said she was prepared to take this case to trial. The Petitioner had maintained throughout her representation of him that he was innocent and wanted to take his case to trial. Counsel, therefore, did not spend much time with him discussing a plea agreement and instead spent her time preparing for a trial. Counsel recalled that the Sunday before trial, the Petitioner indicated he may want to discuss a plea agreement. The Petitioner wanted to enter a guilty plea in exchange for a sentence of six years. On the morning of trial, the State counter offered with a longer sentence, and the Petitioner agreed to accept that plea deal.

She said that the day of trial she received a report indicating that fingerprints from J.L.'s car had been taken and were not compared with the Petitioner's fingerprints. She said she may have used this information at trial, but she did not think it was going to change the proof significantly.

During cross-examination, Counsel testified that the State's original plea offer was

thirty years, to be served at 100%. On the morning of trial, Counsel negotiated with the State for a shorter sentence.

Counsel said the defense strategy was to argue that the State had not met its burden of proof as to the charged offenses and that the victims' testimony was implausible given the time frame. She said she did not make any attempt to interview the victim. Counsel said that she cross-examined the victims during the preliminary hearing and that she determined that they had been drinking on the night of the assault. Counsel testified said that the victim's blood alcohol level was over .2 and that Counsel had retained a defense expert on intoxication who was going to testify about that fact to the jury.

Based upon this evidence, the post-conviction court dismissed the Petitioner's petition for post-conviction relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that his guilty plea was not knowingly and voluntarily entered because "[Counsel] told him that the judge would give him a hundred years if he" went to trial. He asserts that he felt coerced into pleading guilty. The Petitioner also contends that Counsel was ineffective because Counsel never explained to him the range of punishment concerning the charges he faced, failed to adequately investigate the case and failed to review the State's evidence against him. He further asserts that Counsel failed to adequately develop a defense strategy. The State counters that the Petitioner has failed to show that Counsel's representation was ineffective or that his guilty plea was unknowingly and involuntarily entered. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland,* 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987)

(quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad,* 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that there "is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

We first conclude that the Petitioner has not proven that his guilty plea was unknowingly and involuntarily entered. The Petitioner's brief incorrectly asserts that the Petitioner testified that Counsel informed him that the judge might sentence him to 100 years if he went to trial. The Petitioner, in fact, testified that Counsel told him he faced a potential sentence of sixty years, some of which might be required to be served at 100%. He testified that "someone else" said that the judge may sentence him to 100 years. Counsel testified that she discussed with the Petitioner the range of punishment for the charges he faced and his potential punishment if he was convicted. She and her co-counsel were prepared for trial when the State offered the Petitioner a sentence of twenty years, to be served at 30%, a offer the Petitioner accepted. The trial court questioned the Petitioner thoroughly before accepting his guilty plea, and the Petitioner expressed no reservations about Counsel's representation or the plea agreement. Under these circumstances, we conclude that the Petitioner has not proven that his guilty plea was not knowingly and voluntarily entered.

We further conclude that the Petitioner has not proven that Counsel's representation of him was ineffective. Counsel said she discussed with him the charges he faced and the potential punishment if he were convicted. She obtained discovery, including DNA reports, from the State, and she sent the Petitioner a letter explaining those reports. Counsel retained the services of an intoxication expert, who intended to testify about the effects of the victim's

blood alcohol content being over .2. Counsel's defense strategy was one based upon arguing that the State would not be able to prove all the necessary elements of the charges the Petitioner faced. At the post-conviction hearing, the Petitioner presented no witnesses that he alleges that Counsel failed to interview. The Petitioner has not presented clear and convincing proof that Counsel was ineffective. The Petitioner is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and the applicable law, we affirm the post-conviction court's judgment.

_____

ROBERT W. WEDEMEYER, JUDGE